Corrigan, J.
(dissenting). I dissent from this Court’s order granting reconsideration and vacating our December 3,2008, order. 482 Mich 1074 (2008). The Court of Appeals judgment in this case stated, with respect to the causal connection required under MCL 500.3105(1), that “almost any causal connection or relationship will do.” Scott v State Farm Mut Auto Ins Co, 278 Mich App 578, 586 (2008). Our prior order properly vacated that portion of the Court of Appeals judgment as inconsistent with Thornton v Allstate Ins Co, 425 Mich 643 (1986), and Putkamer v Transamerica Ins Corp of America, 454 Mich 626 (1997).
Plaintiff was severely injured in an automobile accident in 1981. She suffered a traumatic brain injury, as well as injuries to her legs. Within seven years of the accident, plaintiff gained a significant amount of weight. She was diagnosed with high cholesterol in 1991. She controlled her cholesterol level with a diet and exercise program until 1997, when her physician prescribed Zocor for high cholesterol. Defendant paid for the medication for approximately seven years, but then terminated payment following an independent medical evaluation. Defendant concluded, on the basis of the independent expert’s report, that plaintiffs high cholesterol (hyperlipidemia) did not arise from the 1981 motor vehicle accident.
Plaintiffs representatives filed suit in probate court, seeking to compel defendant to pay for the medication. The probate court denied defendant’s motion for summary disposition, finding a question of fact concerning whether the necessary causal connection existed between plaintiffs high cholesterol and the accident. The circuit court denied defendant’s application for leave to file an interlocutory appeal. The Court of Appeals affirmed the decision of the probate court. Scott, supra. After discussing the caselaw construing MCL 500.3105(1), the Court of Appeals concluded:
*1037 Plaintiffs presented testimony indicating that the accident caused brain and skeletal injuries, which make it difficult for plaintiff to exercise, and which contribute to poor judgment regarding diet. Plaintiffs also presented evidence that this difficultly in exercising, and poor diet, contribute to hyperlipidemia. Plaintiffs are not required to establish direct or proximate causation. Almost any causal connection will do. Although a genetic predisposition to hyperlipidemia is apparently present, there is no authority that, for purposes of personal protection insurance, a plaintiff must exclude other possible causes (as there is, for instance, when proximate causation is at issue, in a traditional tort context). Plaintiffs have presented evidence to raise a genuine issue of material fact. [Scott, supra at 586 (citations omitted; emphasis added).]
Under MCL 500.3105(1), “an insurer is hable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle.” In concluding that “almost any causal connection or relationship will do” for purposes of establishing causation under MCL 500.3105(1), the Court of Appeals in this case relied on Shinabarger v Citizens Mut Ins Co, 90 Mich App 307, 313-314 (1979), and Bradley v Detroit Automobile Inter-Ins Exch, 130 Mich App 34, 42 (1983), which used that language to describe the required causal connection. Scott, supra at 585-586. This Court has subsequently considered the required showing under MCL 500.3105(1). We have never adopted so expansive a test. Instead, in Thornton, supra at 659-660, we concluded:
In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault [personal protection insurance] benefits to injuries arising out of the “use of a motor vehicle as a motor vehicle.” In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or “but for.” The involvement of the car in the injury should be “directly related to its character as a motor vehicle.” Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1)[] must he the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than “but for,” incidental, or fortuitous, there can be no recovery of [personal protection insurance] benefits. [Emphasis in original; citation omitted.]
In reaching this conclusion, we discussed Kangas v Aetna Cas & Surety Co, 64 Mich App 1, 17 (1975), which adopted the “more than incidental, fortuitous or but for” causation test. Thornton, supra at 650-651. We noted that “[w]hile the Kangas opinion was not available at the time the Michigan no-fault program was enacted, the bulk of the case *1038 law upon which Kangas relied was extant. This case law generally required more than ‘but for,’ incidental or attenuated causation.” Id. at 651.
In Putkamer v Transamerica Ins Corp of America, 454 Mich 626, 634 (1997), we reiterated the test adopted in Thornton:
In reviewing the requirement of subsection 3105(1) that the injury arise out of the “use of a motor vehicle as a motor vehicle,” this Court concluded that the Legislature has provided that there should only be coverage where the causal connection between the injury and the use of the motor vehicle was more than incidental, fortuitous, or “but for.” [Citations omitted.]
The Court of Appeals was compelled to follow Thornton and Putka-mer, which provide the controlling statement of the causal connection required under MCL 500.3105(1). In resorting to the “almost any causal connection or relationship will do” language of Shinabarger and Bradley, which this Court has never adopted, the Court of Appeals failed to do so.[1] Our prior order properly corrected the Court of Appeals’ misstatement of the law. Accordingly, I respectfully dissent from the order vacating our prior order in this case.
The new majority’s failure to enforce Thornton and Putkamer continues a growing and troubling trend. Rather than forthrightly overruling decisions with which it disagrees, it is increasingly becoming the practice of this Court to simply ignore these precedents. See, e.g., Vanslembrouck v Halperin, 483 Mich 965 (2009), where the new majority ignored Vega v Lakeland Hosps, 479 Mich 243, 244 (2007); Hardacre v Saginaw Vascular Services, 483 Mich 918 (2009), where it failed to follow Boodt v Borgess Med Ctr, 481 Mich 558 (2008); Sazima v Shepherd Bar & Restaurant, 483 Mich 924 (2009), where it failed to follow Chrysler v Blue Arrow Transport Lines, 295 Mich 606 (1940), and Camburn v Northwest School Dist (After Remand), 459 Mich 471 (1999); and Juarez v Holbrook, 483 Mich 970 (2009), where it failed to follow Smith v Khouri, 481 Mich 519 (2008).
*1039 In her concurrence, Chief Justice Kelly attempts to explain away the new majority’s actions by sharing her views regarding the prior caselaw that the new majority has otherwise chosen to ignore. But Chief Justice Kelly’s interpretation of a prior case in a concurring statement is not a decision of the Court. More importantly, her argument overlooks the fundamental problem: the new majority’s continuing failure to explain its apparent disregard of this Court’s precedent undermines the predictability and stability of the rule of law. What distinguishes governance by the rule of law from governance by whim is the application across all cases of a body of clear and intelligible principles. Inconsistent application converts the rule of law into rule by whim.
In Van Orden v Perry, 545 US 677, 697 (2005), a concurring justice similarly criticized the United States Supreme Court’s Establishment Clause precedents as being so flexible that they were “incapable of consistent application.” The concurring justice explained that “[t]he unintelligibility of this Court’s precedent raises the further concern that, either in appearance or in fact, adjudication of Establishment Clause challenges turns on judicial predilections.... The outcome of constitutional cases ought to rest on firmer grounds than the personal preferences of judges.” Id. (Thomas, J., concurring).
The concerns expressed in Van Orden find ample support in United States Supreme Court caselaw, which has long recognized the importance of a coherent body of law. See, e.g., Hilton v South Carolina Pub Railways Comm, 502 US 197, 202 (1991) (stating that adherence to precedent promotes stability and predictability). Legal principles should not change erratically; rather, the law should “develop in a principled and intelligible fashion.” Vasquez v Hillery, 474 US 254, 265 (1986) (emphasis added). “While stare decisis is not an inexorable command, the careful observer will discern that any detours from the straight path of stare decisis in our past have occurred for articulable reasons . . . .” Id. at 266 (emphasis added).
On this Court, the new majority offers no articulable reasons whatsoever for its apparent detours from stare decisis. Instead, the majority declines to explain whether — -and, if so, why — it is overruling precedent despite the obvious appearance that it is doing so. If it intends to alter legal principles embedded in this Court’s decisions, the new majority should explain its reasons clearly and intelligibly. Instead, the new majority overrules by indirection, or at least leaves the impression that it is doing so, thereby sowing the seeds of confusion and making it difficult for the citizens of this state to comprehend precisely what our caselaw requires. This appears to be an unfortunate return to our predecessors’ past practice of “frequently pa[ying] little attention to the inconsistencies among its cases and declin[ing] to reduce confusion in [the Court’s] jurisprudence by overruling conflicting decisions.” Devillers v Auto Club Ins Ass’n, 473 Mich 562, 571 n 19 (2005).
Young and Markman, JJ. We join the statement of Justice Corrigan.

 Chief Justice Kelly characterizes the “almost any causal connection” language of Bradley and Shinabarger as “no-fault law as it has been understood for nearly 30 years.” No decision of this Court bears out such an understanding of no-fault law. In addition, Chief Justice Kelly’s suggestion that the “almost any causal connection” standard could be applied with the “more than incidental, fortuitous, or but for” standard is irrelevant and inaccurate. We implicitly rejected that idea by not adopting the “almost any causal connection” language when we considered the extent of the causal connection required under MCL 500.3105(1) in Thornton and Putkamer. Moreover, the “almost any causal connection” language naturally suggests that the requisite causal connection may be established on weaker evidence than the more specific and narrowly drawn “more than incidental, fortuitous, or but for” standard.